UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
     v.                             )    Cr. No. 16-075 S
                                    )
BRADLEY RICHARD ALLEN,              )
                                    )
          Defendant.                )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

Defendant Bradley Richard Allen has been indicted for one count of making a false statement during an attempted purchase of firearms in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2), and one count of making a false statement to a federally-licensed gun dealer in violation of 18 U.S.C. § 924(a)(1). Before the Court is Defendant's Motion to Suppress statements that he made during a custodial interrogation following his arrest on May 4, 2016.[1] For the reasons set forth below, Defendant's Motion is DENIED.

---

[1] Defendant did not request an evidentiary hearing and the Court concludes that one is not required to resolve the issues raised in the Motion to Suppress. See United States v. D'Andrea, 648 F.3d 1, 5 (1st Cir. 2011) ("A criminal defendant does not have a presumptive right to an evidentiary hearing on a motion to suppress."); United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996) ("A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record.") (citations omitted).

I. Background

Defendant was arrested at his home on May 4, 2016 by agents from the federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). The agents had obtained an arrest warrant two days earlier based on allegations that Defendant had made a false statement to a firearms dealer in an attempt to purchase a firearm. Special Agents Troiano and Yankee interviewed Defendant in Special Agent Troiano's car before transporting him to the U.S. Marshals Office in Providence, Rhode Island for processing. Special Agent Troiano turned on a recording device in his pocket before the conversation started. The recording reveals that Defendant initiated conversation with the Special Agents by inquiring about the basis for his arrest. The following exchange ensued:[2]

> T: . . . so bud, let me, let me explain to you first. Well, you're under, you know -- I obviously told you you're under arrest, right? So um, I will explain everything to you, but before I do, I'm just gonna explain your rights, okay?
>
> A: Okay.
>
> T: All right. You ever be-, you've been arrested before, right?
>
> A: Yeah.
>
> T: Okay. Have they read your rights before?
>
> A: Yes.

---

[2] Informal Tr. 1:9-2:11, ECF No. 25-1 ("T" refers to Special Agent Troiano; "A" refers to Defendant Allen).

T: All right. So you have the right to remain silent. [Approximately 3-4 seconds of silence].³ You have the right to an attorney. You have the right not to answer any questions. Okay, you understand all those?

A: Yes.

T: Right. If you want to answer questions and you want to stop at any time, you have the right to stop answering questions. You understand that?

A: Yup.

T: Okay. You understand that if you do want an attorney, and you can't afford one, one'll be appointed for you?

A: Yes.

T: Do you understand all those?

A: Yes.

T: Okay. When we get back to the office, I'll just have you for-, sign a form acknowledging that you were read your rights, all right?

A: All right.

T: Okay. So um, do you remember me calling you about three or four weeks ago when I spoke to you on the phone about the gun you attempted to . . .

A: Yeah.

T: [T]o buy? All right. You 'member that conversation?

A: Yeah.

---

³ The Government claims that, during these seconds, Special Agent Troiano told Defendant that anything Defendant chose to say could and would be used against him in court. Defendant has not filed a reply memorandum to dispute this claim, and did not argue in his Motion to Suppress that this particular warning was not given prior to his interrogation.

3

Special Agent Troiano then interrogated Defendant for approximately thirty minutes about the circumstances of Defendant's relationship with his child's mother, the status of the no contact order that was in place against Defendant, and his application to purchase a firearm.  At the end of the recorded interrogation, Special Agent Troiano asked Defendant whether he was going to hire an attorney or have one appointed.  Defendant responded that he would have to have one appointed as he did not have any income.  According to the Government, Defendant read and signed the ATF's Advice of Rights and Waiver form when they arrived at the federal courthouse.

II. Discussion

Before the Government may use any of the statements that Defendant made during his interrogation by Special Agent Troiano, it must prove, by a preponderance of the evidence, that Defendant voluntarily, knowingly and intelligently waived his Miranda rights.[4] Defendant argues that all of the statements he made prior to arriving at the courthouse must be suppressed because Special Agent Troiano did not explicitly inform him that he had the right to have an attorney present before and during the interrogation and because he did not expressly waive his Miranda rights.

---

[4] See Miranda v. Arizona, 384 U.S. 436 (1966); United States v. Downs-Moses, 329 F.3d 253, 267 (1st Cir. 2003) (citation omitted).

4

The Government argues that Defendant's Miranda warnings were adequate because Special Agent Troiano "clearly and reasonably apprised [Defendant] of his Miranda right to counsel" when he told Defendant that he had "the right to an attorney."[5] The Government further contends that Defendant knowingly and voluntarily waived his Miranda rights because he acknowledged that he understood his rights and voluntarily chose to answer Special Agent Troiano's questions, and his acknowledgement was reinforced when he subsequently signed a written waiver.

A. Adequacy of Miranda Warnings

The first issue is whether Special Agent Troiano's right-to-counsel advisement adequately informed Defendant of his right to have an attorney present before and during questioning.[6] Defendant argues that he was insufficiently apprised of his Miranda rights because Special Agent Troiano did not specifically communicate that Defendant had the right to have an attorney present before and during the interrogation in the car. The Government counters that the plain meaning of the rights as recited by Special Agent Troiano, coupled with the context of the interrogation, proves that Defendant knew he had a right to have an attorney present

---

[5] Gov't Resp. and Opp'n to Mot. to Suppress 6, 8, ECF No. 25.

[6] There is no dispute that Defendant was in a custodial interrogation situation when he was interviewed by the ATF agents.

5

before he answered any questions.  For example, Defendant was told that he had the right not to answer any questions after he was told that he had a right to counsel.  The Government also argues that Defendant "acknowledged understanding each of the warnings" and that the tone of Defendant's voice on the audio recording of the interrogation does not suggest that he was confused or misunderstood his rights.[7]  Finally, the Government points out that Defendant admitted to being familiar with his rights from a previous arrest.

In Miranda v. Arizona, the Supreme Court stated "that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation . . . ."[8]  In the half century that has passed since Miranda was decided, the Supreme Court "has not dictated the words [with] which the essential information must be conveyed,"[9] and it has instructed that:

> "In determining whether police officers adequately conveyed the four warnings[,] . . . reviewing courts are not required to examine the words employed 'as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably

---

[7] Gov't Resp. and Opp'n to Mot. to Suppress 11, ECF No. 25.

[8] 384 U.S. 436, 471 (1966).

[9] Florida v. Powell, 559 U.S. 50, 60 (2010) (citing California v. Prysock, 453 U.S. 355, 359 (1981)).

conve[y] to [a suspect] his rights as required by Miranda.'"[10]

The First Circuit has echoed the Supreme Court's instruction: "[o]fficers need not use any particular magic words . . . any words that clearly inform the suspect of his rights will do."[11] Other circuit courts of appeals have addressed the precise issue presented by Defendant. For example, in a case that involved the same concise "you have the right to an attorney" advice as the case currently under review, the Third Circuit Court of Appeals held that this concise statement did not "undermine the validity of the [Miranda] warning" and that further advising the individual that an attorney could be appointed if the individual could not afford to hire one cannot "be reasonably interpreted to modify the prior, unqualified declaration of [the] general right to counsel."[12] In addition, the Fourth Circuit Court of Appeals has held that the simply stated "you have the right to an attorney," without additional qualification, implies that the right exists and applies "immediately and continue[s] forward in time without qualification."[13]

---

[10] Id. (quoting Duckworth v. Eagan, 492 U.S. 195, 203 (1989) (brackets in original)).

[11] United States v. Acosta-Colon, 741 F.3d 179, 199 n.11 (1st Cir. 2013).

[12] United States v. Warren, 642 F.3d 182, 186 (3d Cir. 2011).

[13] United States v. Frankson, 83 F.3d 79, 82 (4th Cir. 1996).

7

Moreover, in the Supreme Court's most recent discussion of this issue, the defendant had been told that he had "the right to talk to a lawyer before answering any of [the law enforcement officers'] questions," and that he could "invoke this right at any time during th[e] interview."[14] The Supreme Court held that this satisfied Miranda because even when "the warnings were not the clearest possible formulation of Miranda's right-to-counsel advisement, they were sufficiently comprehensive and comprehensible when given a commonsense reading."[15]

The cases cited by Defendant in support of his argument stem from situations in which a defendant was told that he had a right to speak with an attorney prior to questioning but then was not expressly told that he had a right to have an attorney present during questioning, or vice versa. The facts here are different - Special Agent Troiano conveyed Defendant's rights in three parts, broken up by inquiries as to whether Defendant understood each part. In the first part, Special Agent Troiano stated that Defendant had the right to remain silent, the right to an attorney, and the right not to answer any questions. In the second part, Special Agent Troiano told Defendant that if he wanted to answer questions and then wanted to stop answering, that he could stop

---

[14] Powell, 559 U.S. at 53 (internal quotation marks omitted).

[15] Id. at 53, 63.

answering.  Third, Special Agent Troiano stated that if Defendant wanted an attorney but could not afford one, that one would be appointed for him.  While Special Agent Troiano did not specifically state that Defendant had the right to speak with an attorney before the questioning began or to have an attorney present during the questioning, a commonsense reading of the rights as presented to Defendant leads to the conclusion that Special Agent Troiano "reasonably convey[ed] [Defendant's] rights as required by Miranda."[16]  When Special Agent Troiano advised Defendant that he had "the right to an attorney," he did not include any qualifications that might have implied any kind of temporal restrictions on either the application of the right or the opportunity to invoke it.

Defendant also protests that he was "never told that the right to an attorney was immediate."[17]  But Defendant was also not told that his right to remain silent applied immediately, and that it applied for the entire duration of the interrogation, as well as for the entire duration of his time in custody, yet he has not raised this as a deficiency in the communication of his rights.  It was plain that Defendant's right to remain silent applied immediately and there is no implication in the warnings delivered

---

[16] Id. at 60 (quoting Duckworth, 492 U.S. at 203 (internal quotation marks omitted)).

[17] Mot. to Suppress Def.'s Statement 13, ECF No. 22.

9

by Special Agent Troiano that Defendant's right to an attorney was not also immediately applicable. The Court therefore concludes that the warnings delivered to Defendant were adequate because they clearly informed Defendant of his rights under Miranda.[18]

B. Waiver of Miranda rights

The Court next turns its attention to Defendant's contention that his statements should be suppressed because he was not asked whether he waived his rights and he did not explicitly state that he wanted to waive them. The Government argues that it does not need to demonstrate an express waiver of rights and that Defendant waived his rights when he answered all of Special Agent Troiano's questions without any coercion, intimidation, or deception.

While an "accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused 'in fact knowingly and voluntarily waived [Miranda] rights' when making the statement,"[19] it is well-settled that this waiver need not be express.[20] "[A]n implied waiver can be 'inferred from the actions and words of the person interrogated'"[21] because "the law can presume that an individual

---

[18] See Acosta-Colon, 741 F.3d at 199 n.11.

[19] Berghuis v. Thompkins, 560 U.S. 370, 382 (2010) (quoting North Carolina v. Butler, 441 U.S. 369, 373 (1979)).

[20] United States v. Mejia, 600 F.3d 12, 17 (1st Cir. 2010).

[21] Id. (quoting Butler, 441 U.S. at 373).

10

who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford."[22] The Court "examine[s] the 'totality of the circumstances surrounding the interrogation' to determine whether the defendant made both an 'uncoerced choice' and had the 'requisite level of comprehension' such that [this] [C]ourt may properly conclude 'that the Miranda rights have been waived.'"[23]

The recording of the interrogation reveals that Defendant initiated the conversation with Special Agent Troiano when he asked when he would find out what was going on. In response, Special Agent Troiano immediately communicated Defendant's Miranda rights, pausing a few times to ask Defendant if he understood. Each time, Defendant replied "yes" or "yup." Defendant also indicated that it was "all right" if he signed the form indicating his understanding of the rights once he arrived at the courthouse. Next, the recording reflects that Special Agent Troiano and Defendant steadily conversed for approximately twenty-five minutes about

---

[22] Berghuis, 560 U.S. at 385.

[23] Mejia, 600 F.3d at 17 (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)).

11

Defendant's application for a firearm and Defendant's relationship with his child's mother and grandmother.

The Court finds, therefore, that the totality of the circumstances indicates that Defendant voluntarily conversed with Special Agent Troiano during his interrogation in the agent's car. After revealing that this was not his first arrest, that he had been given Miranda warnings on a prior occasion, and that he understood the rights explained to him by Special Agent Troiano, Defendant willingly engaged in a back-and-forth conversation and therefore implied the waiver of his rights.[24]

III. Conclusion

For the reasons set forth herein, Defendant's Motion to Suppress (ECF No. 22) is DENIED.

IT IS SO ORDERED.

_____
William E. Smith
Chief Judge
Date: July 6, 2017

---

[24] See id. at 18.